# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSE VARGAS-SOTO, | § | |
| Petitioner, | § § § | |
| v. | § § | Civil Action No. 4:18-cv-00680-P (Crim. No. 4:11-cr-00050-Y-1) |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Jose Vargas-Soto's ("Vargas-Soto") Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") and brief in support thereof (Civ. Doc. 1 and 2), the Government's response (Civ. Doc. 11), and Vargas-Soto's reply (Civ. Doc. 12).[1] Having considered the Motion to Vacate, briefing, applicable law, and all papers on file with the Court, the Court finds that the Motion to Vacate should be and hereby is **DENIED**.

## BACKGROUND

This Motion to Vacate stems from Vargas-Soto's conviction for illegal reentry after a previous deportation, in violation of 18 U.S.C. § 1326. Crim. Docs. 2, 19, 25. Prior to this conviction, Vargas-Soto had an extensive criminal history, including two prior convictions for driving while intoxicated. PSR ¶¶ 14-16, 39, 47, Crim. Doc. No. 26-1. After completing his term of confinement for his first intoxicated driving conviction,

---

[1] The Court will refer to docket entries from Civil Action 4:18-cv-00680-P as "Civ. Doc(s)." and from Criminal Action No. 4:11-cr-00050-Y-1 as "Crim. Doc(s)."

Vargas-Soto was deported in 2003. *Id*. at ¶ 16. He illegally returned to the United States within that same year and committed the crime of manslaughter, in which he caused the death of a passenger and significant injuries to the other driver while driving under the influence of alcohol. *Id*. at ¶¶ 16, 40–44. His manslaughter conviction records included an indictment, a judgment, and a judicial confession. *Id*. at Ex. 1, pp. 25–30. The indictment charged that Vargas-Soto "recklessly cause[d] the death of . . . an individual . . . by operating a motor vehicle . . . resulting in said motor vehicle . . . striking and colliding with and against another motor vehicle occupied by [the victim] . . . [causing it to] strik[e] a tree and roll[] over, thereby resulting in the death of [the victim]." *Id*. at p. 28. In his judicial confession, Vargas-Soto "judicially confess[ed] to the. . . facts [set out in the indictment][2] and agree[d] and stipulate[d] that the[] facts [were] true and correct." *Id.* at pp. 29–30.

Vargas-Soto was released on parole in January 2006 after serving 11 months of confinement for manslaughter. *Id*. at ¶¶ 16–17. However, in 2007, he reentered the United States illegally and was arrested again, this time for possession of cocaine. *Id.* He was convicted and sentenced to 180 days of imprisonment in November 2007 for cocaine possession (*Id*. at ¶¶ 16–17, 45), and was convicted and sentenced to 24 months of imprisonment in September 2008 for illegal reentry (*Id*. at ¶¶ 17–20). By September 2010, Vargas-Soto had yet again illegally reentered the United States and was arrested for driving while intoxicated in Parker County, Texas. *Id.* He pleaded guilty to the charge and was

---

[2] The confession set out all the facts alleged in the indictment, except for the deadly weapon finding which is not relevant to this Motion to Vacate.

sentenced to 90 days of imprisonment. *Id.* After failing to comply with the conditions of his supervised release, he was sentenced to another 12 months of imprisonment. *Id.* Finally, because he was found in the Northern District of Texas, he was charged with the instant offense. *Id.* at ¶¶ 45–46.

The Presentence Report ("PSR") reflects the November 2010 Sentencing Guidelines for a range of 77–96 months for Vargas-Soto's instant offense. *Id.* at ¶ 80. Upon recommendation of the probation officer, the Court elected to impose an upward departure under U.S.S.G. § 4A1.3. Pet.'s Brief, pp. 8–9, Civ. Doc. 2. The Court concluded that "Vargas[-Soto]'s criminal history category substantially underrepresents the seriousness of his criminal history and the likelihood that he will commit other crimes." *Id*. The report noted that Vargas-Soto had been deported three times, continued to return illegally, had not been deterred by his prior sentences, and continued to commit crimes. PSR at ¶ 93. The Court relied on 18 U.S.C. § 16(b) when it applied the statutory enhancement found in § 1326(b)(2) to sentence Vargas-Soto to 180 months in prison followed by 3 years of supervised release, significantly above the guidelines range. *See* Judgment, p. 2, Crim. Doc. 37.

Vargas-Soto appealed, arguing in relevant part that this Court plainly erred by sentencing him as an aggravated felon because his manslaughter conviction did not qualify as a "crime of violence" under 18 U.S.C. § 16, as incorporated in 8 U.S.C. § 1326(b)(2) by 8 U.S.C. § 1101(a)(43)(F). *See United States v. Vargas-Soto*, 700 F.3d 180, 183 (5th Cir. 2012). However, the Court of Appeals did not reach the issue and upheld the sentence on other grounds. *Id*. Vargas-Soto then filed two unsuccessful motions for relief under 28

U.S.C. § 2255. Civ. Docs. 53, 55. He has now filed an authorized, successive motion to challenge his sentence based on the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). *See* Pet.'s Brief, Ex. 1.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a) (2018); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

## ANALYSIS

**A. Vargas-Soto's Collateral Challenge is not Procedurally Barred.**

"A defendant can challenge his conviction after it is presumed final only on issues of constitutional magnitude and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting

4

from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The Government argues that Vargas-Soto's Motion to Vacate is procedurally barred because he did not challenge the constitutionality of 18 U.S.C. § 16(b) on appeal and failed to show cause for his procedural default. Resp.'s Brief, p. 12–13, Civ. Doc. 11. Vargas-Soto argues that he has shown cause for failing to raise his challenge on direct appeal because his challenge is "so novel that its legal basis [wa]s not reasonably available to [him]" until the Supreme Court decided *Dimaya*. Pet.'s Reply Brief, p. 2, Civ. Doc. 12 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Vargas-Soto is correct. In *Dimaya*, the Supreme Court explicitly overruled the Court's prior decisions relying on § 16(b) and held that it is unconstitutionally vague. Accordingly, Vargas-Soto's current challenge was not reasonably available to him on direct appeal, and it may be raised for the first time as a collateral challenge.

### B. The Supreme Court Struck Down 18 U.S.C. § 16(b) as Unconstitutionally Vague.

Vargas-Soto's conviction for illegal reentry carries a punishment of imprisonment for not more than 20 years "in the case of any alien described in such subsection . . . whose removal was subsequent to a conviction for commission of an *aggravated felony*." 8 U.S.C. § 1326(b)(2) (emphasis added). The term "aggravated felony" is defined as "a *crime of violence* (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (emphasis added). The term "crime of violence" means either (a) "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or (b) "any other offense that is a felony and

that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.

At the time of Vargas-Soto's conviction for illegal reentry, he had several prior convictions, including one under Texas Penal Code § 19.04 ("Texas Manslaughter"). This Court relied upon Vargas-Soto's prior conviction of Texas Manslaughter to add a 16-level increase to his sentence under § 1326(b)(2). PSR at ¶ 30. The Court specifically found that "[t]his conviction is a crime of violence because it is a felony offense that has a reckless *mens rea* which meets the generic, contemporary meaning of Manslaughter, as an enumerated offense." *Id.* However, nearly seven years after the Court sentenced Vargas-Soto, the Supreme Court held § 16(b), as incorporated into the definition of "aggravated felony," impermissibly vague in violation of the Due Process Clause of the Fifth Amendment. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018). *Dimaya* did not reach the same finding as to § 16(a), which means it remains a viable definition of "crime of violence." *Id.* at 1207.

**C. Vargas-Soto's Prior Conviction of Manslaughter Constitutes a Crime of Violence Under § 16(a).**

In his Motion to Vacate, Vargas-Soto seeks to reduce his sentence because he claims the Court necessarily relied upon § 16(b) during sentencing in violation of his due process rights under the Fifth Amendment. Pet.'s Brief at p. 1. The Government argues that Vargas-Soto's conviction did not violate his due process rights because the Court could have relied upon § 16(a) to impose his sentence. Resp.'s Brief, p. 10, Civ. Doc. 11. As such, the chief disagreement between the parties is whether Vargas-Soto's conviction of

Texas Manslaughter constitutes a crime of violence under § 16(a). More specifically, the parties dispute whether Texas Manslaughter has, as an element, the use of force.

The Government primarily relies on *United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc) to argue that use of force is an element of Texas Manslaughter. The Government argues that "[u]nder *Reyes-Contreras*, a statute that criminalizes recklessly causing the death of an individual is one that has, as an element, the use of force because force in the common-law sense is necessary to the causation of death." Resp.'s Brief, p. 14, Civ. Doc. 11. Because Texas Manslaughter provides that "[a] person commits an offense if he recklessly causes the death of an individual," the Government reasons that Texas Manslaughter necessarily has force as an element. *Id.* (quoting TEX. PENAL CODE § 19.04).

Vargas-Soto counters that *Leocal v. Ashcroft*, 543 U.S. 1 (2004) forecloses the Government's reliance on *Reyes-Contreras* to establish that use of force is an element of Texas Manslaughter. According to Vargas-Soto, *Leocal* stands for the proposition that "[i]f an offense can be committed by a drunk-driving accident, that offense does not have use of physical force against the person or property of another as an element." Pet.'s Reply Brief at p. 5. Because Texas Manslaughter can be accomplished by a drunk-driving accident, Vargas-Soto argues that Texas Manslaughter does not have use of force as an element. *Id*.

This Court disagrees with Vargas-Soto's reading of *Leocal*. In *Leocal*, the Supreme Court held that a DUI offense with no *mens rea* or a *mens rea* of only negligence could not constitute a crime of violence under § 16. *Leocal*, 543 U.S. at 9–11. In reaching that

conclusion, the Supreme Court explained that "[i]nterpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Id*. at 11. Importantly however, the Supreme Court limited its holding by stating that *Leocal* did "not present [the Court] with the question [of] whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." *Id.* at 12. This was because the Court in *Leocal* was applying Florida's DUI statute, which does "not require any mental state with respect to the use of force against another person, thus [only] reaching individuals who were negligent or less." *Id*. Accordingly, *Leocal* is not as far-reaching as the Government argues; it does not stand for the absolute proposition that all drunk-driving accidents necessarily lack use of force as an element.[3] As previously shown, Texas Manslaughter requires a *mens rea* of recklessness. TEX. PENAL CODE § 19.04. As a result, *Leocal* is entirely compatible with the *Reyes-Contreras* holding that a statute criminalizing recklessly causing the death of an

---

[3] The other cases Vargas-Soto cites in support of his reading of *Leocal* are unpersuasive. *United States v. Windley*, 864 F.3d 36, 38 (1st Cir. 2017) (finding Massachusetts assault and battery with a dangerous weapon charge did not qualify as a crime of violence because that law only required that the reckless act be committed intentionally, but did not require the defendant to be aware of the risk of serious injury that any reasonable person would perceive); *United States v. Fields*, 863 F.3d 1012, 1015–1016 (8th Cir. 2017) (interpreting *Voisine v. United States*, 136 S. Ct. 2272 (2016) in light of troublesome Eighth Circuit precedent—as discussed in the dissent at p. 1016—which has no binding application to the present case); *United States v. Middleton*, 883 F.3d 485, 500 (4th Cir. 2018) (Floyd, Cir. Judge, concurring in part to argue that the definition of "crime of violence" should require a higher level of *mens rea* than recklessness).

8

individual, such as Texas Manslaughter, is one that has use of force as an element.[4] *See Reyes-Contreras*, 910 F.3d 169, 183–84.

Because the use of force is an element of Texas Manslaughter, it qualifies as a crime of violence under § 16(a). As such, the Court did not err in relying on Vargas-Soto's prior conviction of Texas Manslaughter when imposing his enhanced sentence pursuant to § 1326(b)(2). Vargas-Soto's Motion to Vacate should be **DENIED**.

## CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. FED. R. APP. P. 22 (b). Rule 11 of the Rules Governing § 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

---

[4] To the extent Vargas-Soto argues the discussion of recklessness in *Reyes-Contreras* is dicta, he is incorrect. While the discussion of recklessness is addressed as an alternative holding, "[the Fifth C]ircuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *Reyes-Contreras*, 910 F.3d at 179 n.19 (citing *Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015)).

Upon review and consideration of the record on whether Vargas-Soto has made a showing that reasonable jurists would question this Court's rulings, the Court determines that he has not and that a certificate of appealability should not issue for the reasons stated in this order. The Court therefore **DENIES** a certificate of appealability.

## CONCLUSION

It is therefore **ORDERED** that Vargas-Soto's Motion to Vacate (Civ. Doc. 1) should be and hereby is **DISMISSED WITH PREJUDICE**, and alternatively, **DENIED**. It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **7th day** of **April, 2020.**

*/s/ Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE